************************************************************************

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

************************************************************************

| | | |
|---|---|---|
| **DAWN MORING**<br>2014 Glencairn<br>Toledo, OH 43614 | ) | Case No.: |
| | ) | Judge |
| Plaintiff, | ) | **COMPLAINT WITH JURY DEMAND** |
| v. | ) | |
| **C.R. BARD, INC.**<br>730 Central Avenue<br>Murray Hill, NJ 07974 | ) | |
| and | ) | |
| **DAVOL, INC.**<br>100 Sockanosset Crossroads<br>Cranston, Rhode Island 02920 | ) | |
| Defendants | ) | |

*****

Now comes Plaintiff DAWN MORING (Plaintiff), by and through counsel, and for her complaint against Defendants C.R. Bard, Incorporated and Davol, Incorporated, alleges the following:

## THE PARTIES

1. Plaintiff is, and was at all time pertinent herein, a citizen and resident of the State of Ohio.

2. Defendant C.R. BARD (BARD) is a New Jersey Corporation with its principal place of business at 730 Central Avenue, Murray Hill, New Jersey 07974. At all relevant times BARD designed, manufactured, marketed, supplied and sold to distributors, physicians, hospitals and medical practitioners certain hernia repair mesh to be surgically implanted in patients throughout the United States, including the state of Ohio. BARD is the corporate parent/stockholder of DAVOL, INC. (DAVOL) and participates in the manufacture and distribution of the defective Composix Kugel Patch (Patch). It also manufactures and supplies DAVOL with material that forms part of the mesh. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

3. Defendant DAVOL is an was at all relevant times a wholly owned subsidiary of BARD, with its principal place of business at 100 Sockanosset Crossroads, Cranston, Rhode Island 02920. At all relevant times, DAVOL was a corporation duly organized and existing under the laws of the state of Delaware with its principal place of business for manufacturing hernia surgical repair products in Cranston, Rhode Island. DAVOL designed, manufactured, marketed, supplied and sold to distributors, physicians, hospitals and medical practitioners certain hernia repair patches, specifically the Patch, to be surgically implanted in patients throughout the United States, including Ohio.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Defendants because they engage in continuous and systematic activities with Ohio, where the product that forms

the basis of this action was surgically implanted into Plaintiff. Defendants purposefully avail themselves of the privileges and benefits of conducting business in Ohio by distributing, recommending, merchandising, advertising, promoting, supplying and selling to distributors, physicians, hospitals and medical practitioners certain hernia repair patches to be surgically implanted in patients throughout Ohio.

5. This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. 1332(a)(1) because the parties are completely diverse and the amount in controversy exceeds $75,000.00, excluding interests and costs.

6. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b)(2) because for purposes of venue, all events relevant to this action occurred in the Northern District of Ohio. Specifically, the product that forms the basis of these claims was surgically implanted into Plaintiff in Lucas County, Ohio.

## STATEMENT OF THE FACTS

7. In 2004, Plaintiff underwent surgery in Toledo, Lucas County, Ohio to repair abdominal hernias with a Patch designed, manufactured and sold by Defendants.

8. On or about March 21, 2007, Plaintiff received a letter from the University of Toledo Medical Center informing her that the Patch inserted during her surgery was defective.

9. On January 30, 2008, surgery was required to remove the defective Patch.

10. At all material times, Defendants BARD and DAVOL were in the business of designing, manufacturing, and marketing the Composix Kugel Patch. Defendants designed and manufactured the Patch at issue.

11. The discovery rule is applicable as Plaintiff could not have become aware of the existence of the defect in the subject Patch until at least March, 2007.

**COUNT I – Strict Products Liability**

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. The Patch caused the injuries and damages claimed herein due to its design, manufacturing and marketing defects.

14. The design defect existed at the time that the Patch left Defendants' possession and rendered it unreasonably dangerous for its intended and foreseeable use considering the utility and risks involved in its use. At the time that the Patch left Defendants' possession, there were safer alternative designs, other than the design used in the subject Patch that would have prevented or significantly reduced the risk of Plaintiff's injuries. At the time the Patch left Defendants' possession, said alternative designs were both economically and technologically feasible.

15. The manufacturing defect existed at the time the Patch left Defendants' possession and rendered it unreasonably dangerous for its intended and foreseeable use considering the utility and risks involved in its use. The marketing defect existed at the time the Patch left Defendants' possession and rendered it unreasonably dangerous due to the lack of adequate warning or instructions to prevent the risk of Plaintiff's injuries.

16. The defects produced the injuries and damages that Plaintiff suffers.

17. Defendants DAVOL and BARD's conduct in continuing to market, sell and distribute the Patch after obtaining knowledge that it was failing and not performing as

represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages in such a sum as to serve to deter similar conduct in the future.

**COUNT II – Negligence**

18. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

19. With regard to design, manufacture and marketing of the Patch, Defendants BARD and DAVOL, through their officers, agents, employees, and representatives made commissions and omissions that amount to negligence.

20. Said acts and omissions included by are not limited to:

21. Designing, then marketing the Patch mesh when they knew or should have known that its design rendered it unreasonably dangerous for its intended and foreseeable use.

22. Failing to implement design improvements to the Patch that they knew or should have known would make it less prone to the type of malfunction that gives rise to this action.

23. Failing to implement adequate warnings or instructions when they knew or should have known that such would prevent or reduce the risk of Plaintiff's damages;

24. Failing to monitor the manufacturing process and/or implement a quality assurance process adequate to prevent defectively designed and manufactured Patches from reaching consumers.

25. These acts and omissions constitute a breach of the standard of care and duty that Defendants owe to Plaintiff and were the proximate cause of Plaintiff's damages.

26. Defendants DAVOL and BARD's conduct in continuing to market, sell and distribute the Composox Kugel Patch after obtaining knowledge that it was failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages in such a sum as to serve to deter them from similar conduct in the future.

**COUNT III – Breach of Implied Warranty**

27. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

28. Defendants BARD and DAVOL are liable to Plaintiff for their breach of implied warranty in the following respects:

29. Defendants sold the Patch which was implanted in Plaintiff. Defendants implied warranted to Plaintiff, Plaintiff's physicians and healthcare providers, that the mesh was of merchantable quality and safe for the use for which it was intended.

30. Defendants knew or should have known that the Patch at the time of sale was intended to be used for the purpose of surgically implanting it into the body for hernia repair.

31. Plaintiff, Plaintiff's physicians and health care providers, reasonably relied on Defendants' judgment, indications and statements that the Patch was fit for such use.

32. When the Patch was distributed into the stream of commerce and sold by Defendants, it was unsafe for its intended use, and not of merchantable quality, as warranted by Defendants, in that it had dangerous propensities when used as intended

and implanted into a patient's body where it could cause serious injury of harm or death to the patient.

33. Plaintiff suffered injuries and damages as a result of Defendants' conduct and action.

34. Defendants DAVOL and BARD's conduct in continuing to market, sell and distribute the Composox Kugel Patch after obtaining knowledge that it was failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages in such a sum as to serve to deter them from similar conduct in the future.

**COUNT IV – Violation of the Ohio Deceptive Trade Practices Act**

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Defendants BARD and DAVOL engaged in unfair and deceptive trade practices with Plaintiff in the following respects:

37. Defendants are merchants who study, test, design, develop, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Composix Kugel Patch for hernia repair surgery.

38. Defendants knowingly committed unfair and deceptive practices in their study, test, design, development, manufacture, inspection, production, marketing, promotion, advertising, distribution and/or sale of the Composix Kugel Patch for hernia repair surgery.

39. Defendants knowingly committed unfair and deceptive trade practices when they failed to safely design and construct an effective Composix Kugel Patch for hernia repair surgery.

40. Defendants knew or reasonably should have known that some Patches were at risk while they were engaged in the study, test, design, development, manufacture, inspection, production, marketing, promotion, advertising, distribution and/or sale of the Patch for hernia repair surgery.

41. Defendants did not inform the FDA prior of their knowledge of the dangers posed to patients of the Composix Kugel Patch, which was susceptible to failure and subject to recall, prior to December 2005, or after Plaintiff's initial surgery.

42. Defendants did not inform the public at large prior to December 2005 of their knowledge concerning the dangers posed to patients by the Composix Kugel Patch.

43. Defendants failed to provide adequate warnings regarding the use and potential problems with such patches used for hernia repair.

44. Defendants' actions occurred while they were engaged in trade and commerce, and all of the conduct occurred in the course of their business.

45. Defendants' conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge that it was failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages in such a sum as to serve to deter Defendants BARD and DAVOL from similar conduct in the future.

**COUNT V – Negligent Infliction of Emotional Distress**

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Defendants BARD and DAVOL are liable to Plaintiff for the negligent infliction of emotional distress in the following respect;

48. Plaintiff suffered severe emotional distress, which was as a result of Defendants' negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling the Composix Kugel Patch for hernia repair surgery.

49. Plaintiff suffered severe emotional distress, which was as a result of Defendants' negligent conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery.

50. Defendants' conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge that it was failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages in such a sum as to serve to deter Defendants BARD and DAVOL from similar conduct in the future.

**COUNT VI – Intentional Infliction of Emotional Distress**

51. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52. Defendants BARD and DAVOL are liable to Plaintiff for the intentional infliction of emotional distress in the following respect;

53. Plaintiff suffered severe emotional distress, which was as a result of Defendants' extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sellig the Composix Kugel Patch for hernia repair surgery.

54. Plaintiff suffered severe emotional distress, which was as a result of Defendants' extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery.

55. Defendants' conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge that it was failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages in such a sum as to serve to deter Defendants BARD and DAVOL from similar conduct in the future.

**COUNT VII –Breach of Implied Warranty**

56. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57. Defendants BARD and DAVOL are liable to Plaintiff for their breach of implied warranty in the following respect:

58. Defendants sold the Kugel Patch which was implanted in Plaintiff. Defendants impliedly warranted to Plaintiff, her physicians and health care providers, that the Composix Kugel Patch was of merchantable quality and safe for the use for which intended.

59. Defendants BARD and DAVOL knew or should have known that the Composix Kugel Patch at the time of sale was intended to be used for the purpose of surgically implantation into the body for hernia repair.

60. Plaintiff, her physicians and health care providers reasonably relied on Defendants' judgments, indications and statements that the Kugel Patch was fit for such use.

61. When the Patch was distributed into the stream of commerce and sold by Defendants, the Patch was unsafe for its intended use, and not of merchantable quality, as warranted by Defendants, in that it had dangerous properties when used as intended and implanted into a patient's body where it could cause serious injury or even death.

62. Plaintiff suffered injuries as a result of Defendants' conduct and actions.

**COUNTY VIII –Failure to Warn**

63. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

64. In the course of business, Defendants deigned, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

65. At the time of the design, manufacture and sale of the Patch, and more specifically at the time that Plaintiff received the Patch, it was defective and unreasonably dangerous when put to its intended and reasonably anticipated use. Further, the Composix Kugel Patch was not accompanied by a proper warning regarding significant adverse consequences associated with it.

66. Defendants BARD and DAVOL failed to provide any warnings, labels or instructions of the Patch's dangerous propensities that were known or reasonably known at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user. Defendants failed to warn of the known or knowable injuries associated with malfunction of the Patch, which could result in severe injury or suffering.

67. The dangerous and defective conditions in the Composix Kugel Patch existed at the time it was delivered by the manufacturer to the distributor. At the time that Plaintiff had her surgery, the Patch was in the same condition as when manufactured, distributed and sold.

68. Plaintiff did not know at the time of use of the Patch, nor at any time prior thereto, of the existence of such defects.

69. Plaintiff sustained the aforementioned injuries and damages as a direct result of Defendants' failure to warn.

70. Defendants DAVOL and BARD's conduct in continuing to market, sell and distribute the Composox Kugel Patch after obtaining knowledge that it was failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages in such a sum as to serve to deter Defendants BARD and DAVOL from similar conduct in the future.

**COUNT IX –Constructive Fraud**

71. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72. Defendants, while in possession of unique and pertinent information involving the safety of the Patch, presented such Patch as mechanically sound and failed to warn of its inherent design and/or manufacturing defects. Defendants suppressed this information and continued sales and marketing of the product to the general public. Defendants knew or should have known that Plaintiff had no means, other than Defendants' full, accurate and objective disclosure, of obtaining the relevant information.

73. Through their unique knowledge and expertise regarding the nature of the Patch, and through their statements to physicians and patients in advertisements, promotional materials and other communications, Defendants professed and affirmed to Plaintiff their knowledge of the truth of the representation that the Patch was safe for its intended use and was free from design and/or manufacturing defects.

74. Defendants' misrepresentations and omissions were made intentionally to induce the purchase of the Patch.

75. Defendants' conduct took unconscionable advantage of their dominant position of knowledge, engaging in constructive fraud.

**COUNT X –Misrepresentation by Omission**

76. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

77. Defendants misrepresented the soundness and reliability of the Patch to the general public through promotional and marketing campaigns, and continued this misrepresentation for an extended period of time, w ithout disclosing information regarding the defective, hazardous and harmful complications relating to the Patch.

78. Defendants took advantage of the limited ability Plaintiff had to discover Defendants' intentional and strategic concealment of the Patch's defects.

79. Defendants BARD and DAVOL concealed these design and/or manufacturing defects from the public by withholding information pertaining to the inherent design and/or manufacturing defects and high risks of failure relating to the Patch.

80. Defendants' intentional misrepresentations and omissions were made willfully, wantonly and/or recklessly to Plaintiff, her physicians and health care providers and the general public to induce the purchase of the Patch.

81. Defendants knew or should have known of the high risk the Plaintiff would encounter by unwittingly agreeing to have the Patch implanted in her body.

**WHEREFORE,** Plaintiff requests a judgment against Defendants BARD and DAVOL for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate, costs of this action, attorney fees and such other and further relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Kyle A. Silvers, Esq., (0067654)
SHINDLER, NEFF, HOLMES,
SCHLAGETER & MOHLER, LLP
1200 Edison Plaza
300 Madison Avenue
Toledo, OH 43604
(419) 243-6281Telephone
(419) 2430129 Fax
ksilvers@snhslaw.com
Attorney for Plaintiff